# Supreme Court of Texas

No. 24-0581

Shamrock Enterprises, LLC d/b/a FRSTeam Gulfcoast/LA,

*Petitioner*,

v.

Top Notch Movers, LLC,

*Respondent*

On Petition for Review from the
Court of Appeals for the Thirteenth District of Texas

**Argued October 8, 2025**

JUSTICE DEVINE delivered the opinion of the Court.

CHIEF JUSTICE BLACKLOCK filed a concurring opinion, in which Justice Lehrmann, Justice Busby, Justice Young, and Justice Sullivan joined.

This restricted appeal challenges a no-answer default judgment based on defective service of process. The plaintiff sought substituted service under a statute requiring process to be forwarded to the defendant's "most recent address . . . on file with the secretary of state."[1]

---

[1] TEX. BUS. ORGS. CODE §§ 5.251, .253.

Assuming the defendant was amenable to service under that statute, which is disputed, the record does not reflect that process was forwarded to the statutorily required address. Because the lower courts erred in presuming it was, we reverse the court of appeals' judgment, vacate the default judgment, and remand to the trial court.

In the aftermath of Hurricane Laura, Top Notch Movers, a Texas-based LLC, provided moving services in Alabama and Louisiana to Alabama-based Shamrock Enterprises, LLC d/b/a FRSTeam Gulfcoast/LA. By letter addressed to Shamrock at a location in Summerdale, Alabama, Top Notch demanded payment of more than $170,000 for unpaid invoices.[2] Weeks later, Top Notch sued Shamrock in Texas for nonpayment of services but provided a different address for service of process. The original petition identified Shamrock's "principal office" as a location in Foley, Alabama, and alleged that Shamrock was amenable to substituted service on the Secretary of State under section 5.251(1)(A) of the Texas Business Organizations Code.

As Top Notch requested, the district clerk issued citation on Shamrock via the Secretary of State at the Foley, Alabama address. The Secretary's *Whitney* certificate,[3] which Top Notch filed with the trial court, states that copies of the citation and original petition were

---

[2] The demand letter was also mailed to two ostensibly related entities at addresses in Dallas, Texas, and Kenning, Louisiana, but neither entity was named a party in the proceedings below.

[3] *See Whitney v. L&L Realty Corp.*, 500 S.W.2d 94, 95 (Tex. 1973) (holding that a trial court lacks jurisdiction to issue a default judgment based on substituted service on the Secretary of State unless the Secretary has certified that a copy of the citation was forwarded to the defendant); *see also U.S. Bank Nat'l Ass'n v. Moss*, 644 S.W.3d 130, 132 n.2 (Tex. 2022) (explaining the origin of *Whitney* certificates).

forwarded to Shamrock at the Foley, Alabama address but the mailing was returned with the notation "Return to Sender, Vacant, Unable to Forward."

When Shamrock failed to appear, Top Notch promptly filed a motion for default judgment, certifying the Foley, Alabama location as Shamrock's "last known mailing address."[4] The trial court granted the motion and rendered a default judgment awarding Top Notch actual damages, attorney's fees, and costs. The district clerk subsequently mailed the judgment to Shamrock at the Foley, Alabama address, but it too was returned as undeliverable.

Several months later, Shamrock filed a restricted appeal seeking to vacate the default judgment based on improper service of process. The court of appeals affirmed, holding that (1) Shamrock was amenable to substituted service under section 5.251(1)(A) of the Business Organizations Code and (2) the *Whitney* certificate was irrebuttable proof that Shamrock was properly served.[5]

A restricted appeal permits a direct attack on a default judgment when the deadline for filing an ordinary appeal has passed.[6] After satisfying jurisdictional requirements not at issue here, a restricted appeal may be sustained on the merits only if error is apparent on the

---

[4] *See* TEX. R. CIV. P. 239a. The rule now requires a party seeking a default judgment to additionally certify the defaulting party's last known email address, but that rule change was not effective when Top Notch filed its motion for default judgment. *See id.* (amended Sept. 8, 2023).

[5] 711 S.W.3d 699, 700, 702-04 (Tex. App.—Corpus Christi–Edinburg 2024).

[6] *See* TEX. R. APP. P. 30.

face of the record.[7] When proper service is challenged in this procedural posture, it must be proved, not presumed.[8] If the record does not affirmatively demonstrate proper service, a no-answer default judgment cannot stand.[9]

As to that, Shamrock contends the record establishes that (1) it was not amenable to substituted service under section 5.251(1)(A) because it was not "transacting business in this state"; (2) even if it was, Top Notch failed to strictly comply with that statute's service requirements; (3) due process requires reversal of a no-notice default judgment when a *Whitney* certificate shows the Secretary's attempted forwarding was unsuccessful; and (4) a no-notice default judgment must be reversed when the record does not demonstrate the nonresident had minimum contacts with Texas. Because Shamrock is correct on the second issue, we do not reach the others.

"To transact business in this state," a foreign entity must register with the Secretary of State, maintain that registration "while transacting business in this state," and designate a registered agent and

---

[7] *See* TEX. R. APP. P. 26.1(c) (time limit for filing a restricted appeal in a civil case), 30 (establishing requisites for a restricted appeal); *Alexander v. Lynda's Boutique*, 134 S.W.3d 845, 848 (Tex. 2004) (listing the four requirements for a restricted appeal); *see also Ex parte E.H.*, 602 S.W.3d 486, 497 (Tex. 2020) (explaining that all restricted-appeal elements are jurisdictional except error on the face of the record).

[8] *Spanton v. Bellah*, 612 S.W.3d 314, 316 (Tex. 2020); *McKanna v. Edgar*, 388 S.W.2d 927, 928 (Tex. 1965).

[9] *Hubicki v. Festina*, 226 S.W.3d 405, 408 (Tex. 2007); *Primate Constr., Inc. v. Silver*, 884 S.W.2d 151, 153 (Tex. 1994).

office for service of process.[10]   If the foreign entity fails to meet these requirements, section 5.251(1)(A) makes the Secretary of State the entity's agent for service of process.   Such service is effectuated by delivering duplicate copies of the process and any required forwarding fees to the Secretary,[11] who must then send one copy to the named entity "addressed to the most recent address of the entity on file with the secretary of state."[12]

Top Notch's original petition alleged that Shamrock was "required to register with the Secretary of State but has not appointed or maintained a registered agent for service of process in Texas." Shamrock concedes it neither registered nor maintained a registered agent in Texas but disputes that it was required to do so.  As Shamrock notes, the registration requirement applies when an entity "transact[s] business in this state,"[13] but "transacting business in *interstate*

---

[10] TEX. BUS. ORGS. CODE §§ 9.001 (identifying the foreign entities required to register to "transact business in this state" and "while transacting business in this state"), .004(b)(9) (registration must include the name and address of the initial registered office and agent for service of process); *see id.* §§ 1.002(28)-(29) (defining "foreign entity" as one whose formation and internal affairs are governed by another jurisdiction's laws and a "foreign filing entity" as one who "registers or is required to register as a foreign entity under Chapter 9"), 5.201(a), (b) (requiring a foreign filing entity "to designate and continually maintain in this state" a registered agent and registered office for service of process).

[11] *Id.* § 5.252(a)(1), (a)(2)(B).

[12] *Id.* § 5.253(a), (b)(1).

[13] *Id.* § 9.001(a).

5

commerce" "do[es] not constitute transaction of business in this state."[14] Because the invoices Top Notch attached to its trial-court filings reflect a business transaction between a Texas resident and an Alabama resident for services to be performed in Louisiana and Alabama, Shamrock contends the record demonstrates that it was engaged in interstate commerce and, therefore, not transacting business in Texas, not required to register, and not amenable to substituted service under section 5.251(1)(A). Without resolving the parties' dispute about those matters, we can assume, without deciding, that Shamrock was subject to service of process under section 5.251(1)(A) because error requiring reversal is readily apparent in a different regard.

"[F]or a default judgment to survive a restricted appeal, the face of the record must reflect that service was forwarded to the address required by statute."[15] For substituted service to count under section 5.251(1)(A), the Secretary must have forwarded the process to the address the statute designates: the "most recent address of the entity on file with the secretary of state."[16] Top Notch's trial-court filings alleged that the Foley, Alabama address was Shamrock's "principal office" and "last known mailing address," but nowhere does

---

[14] *Id.* § 9.251(9) (emphasis added) (listing activities excluded from the meaning of "transaction of business in this state" "for purposes of this chapter," including "transacting business in interstate commerce").

[15] *Wachovia Bank of Del., N.A. v. Gilliam*, 215 S.W.3d 848, 850 (Tex. 2007).

[16] TEX. BUS. ORGS. CODE § 5.253(b)(1); *see Whitney*, 500 S.W.2d at 94 (identifying two major requirements to support a default judgment based on substituted service: (1) amenability to process under the statute and (2) proof in the record that the defendant was, in fact, "served in the manner required by statute").

6

the record reflect, by allegation or otherwise, that the Foley, Alabama address was Shamrock's "most recent address . . . on file with the secretary of state." We cannot simply presume that the address Top Notch provided is the one the statute requires. To the contrary, "the face of the record must show that the forwarding address is the one required by statute."[17]

The court of appeals held that the Secretary of State's "*Whitney* certificate conclusively established that [Shamrock] was properly served with process,"[18] but this was error. Because we presume nothing, the Secretary of State's certification establishes only the facts stated therein.[19] In this case, the Secretary's certificate documented that process was forwarded to Shamrock at the Foley, Alabama address, but it did not identify that address as Shamrock's address on file, let alone its most recent one. Our opinion in *Wachovia Bank of Delaware, N.A. v. Gilliam* forecloses reliance on the Secretary's *Whitney* certificate to presume that substituted service complied with the statutory requirements when it does not so state.[20]

Like this case, *Wachovia Bank* involved a restricted appeal challenging a default judgment based on noncompliance with statutes

---

[17] *Wachovia Bank*, 215 S.W.3d at 850.

[18] 711 S.W.3d at 703.

[19] TEX. BUS. ORGS. CODE § 4.005 ("A court . . . shall accept a certificate issued . . . by the secretary of state . . . that is certified by the secretary of state as prima facie evidence *of the facts stated in the certificate*[.]" (emphasis added)).

[20] 215 S.W.3d at 850-51.

authorizing substituted service on the Secretary of State.[21] The statutes at issue there required process to be forwarded to the foreign corporation's "principal office," and we vacated the judgment because the petition, citation, return, and *Whitney* certificate listed an address without alleging it was the defendant's home office, principal office, or anything else for that matter.[22] And because "nothing in the record show[ed] that the Secretary of State forwarded process to [the defendant's] home office or principal office as required by the statutes on which the plaintiffs rel[ied], error [was] apparent on the face of the record."[23]

The same infirmity is present here. While the petition, citation, return, and *Whitney* certificate state that process was forwarded to an address alleged to be Shamrock's "principal office" and "last known mailing address," those are not the addresses the Business Organizations Code designates for forwarding process to the defendant. Various Texas statutes authorize substituted service on a government official who must then forward service to the defendant at an address designated by the authorizing statute,[24] but the requirement of strict

[21] *Id.* at 848.

[22] *Id.* at 850-51.

[23] *Id.* at 851.

[24] *See, e.g.*, TEX. BUS. & COM. CODE § 302.108(b)(2) (requiring mailing to "the seller's principal business location at the last address on file with the secretary of state"); TEX. CIV. PRAC. & REM. CODE §§ 17.045, .091 (requiring the Secretary to forward process to a nonresident's "home or home office"); *id.* § 17.063 (requiring mailing by a "properly addressed letter"); TEX. OCC. CODE §§ 1803.155 (requiring forwarding to "the address of the nonresident, as shown on the nonresident's registration statement"), 2051.402 (specifying service by

compliance does not allow mixing and matching among those statutes.[25] Different substituted-service statutes provide different service paths. The path Top Notch chose required forwarding to the most recent address on file with the Secretary of State, and if there was no such address because Shamrock never registered, Top Notch might have made a case for substituted service under a different statute authorizing forwarding to a different address or by a different method.[26] But having hitched its wagon to section 5.251(1)(A), the default judgment can survive only if the record demonstrates strict compliance with that statute. The *Whitney* certificate is not proof that it does, let alone conclusive proof.

As *Wachovia Bank* explains, a *Whitney* certificate conclusively "establishes that process was served and forwarded to the address provided," but "we cannot presume" that "the forwarding address is the

---

delivery to the individual or mailing to the individual's "place of residence" or "principal place of business").

[25] *Cf. McKanna*, 388 S.W.2d at 929 ("[I]t is imperative and essential that the record affirmatively show a strict compliance with the provided mode of service.").

[26] *See* TEX. BUS. ORGS. CODE § 5.256 ("This chapter does not preclude other means of service of process, notice, or demand on a domestic or foreign entity as provided by other law."). For example, the Texas long-arm statute authorizes substituted service on the Secretary of State for a nonresident who "has not designated or maintained a resident agent for service" but either (1) is required by statute to do so or (2) "engages in business in this state"; however, unlike section 5.253 of the Business Organizations Code, the long-arm statute requires the Secretary to forward process to the nonresident's "home or home office." TEX. CIV. PRAC. & REM. CODE §§ 17.044–.045. In this case, Top Notch did not seek and expressly does not rely on substituted service under the long-arm statute to support the default judgment.

one required by statute."[27] In other words, absent fraud or mistake, the *Whitney* certificate is irrebuttable proof that service was forwarded as addressed, but it does not conclusively establish that "the forwarding address was correct."[28] As to that matter, the face of the record must show compliance with the statute.[29] "When a default judgment is challenged by restricted appeal, there are no presumptions in favor of valid service,"[30] so unless the *Whitney* certificate "certifies that the forwarding address is the one required by statute, we cannot presume" that it is.[31]

Despite the clarity with which *Wachovia Bank* elucidates the distinction between what a government official's certificate does and does not establish, intermediate appellate courts, including the court of appeals here, have overlooked this controlling authority. Before *Wachovia Bank*, we had issued opinions describing a *Whitney* certificate as conclusive proof that the Secretary of State "received service of process" and "forwarded the service as required by statute."[32] But as *Wachovia Bank* explained and clarified,[33] in the context of those cases, those statements did not pertain to a dispute about whether service was

---

[27] 215 S.W.3d at 850.

[28] *Id.*

[29] *Id.*

[30] *Id.* at 848.

[31] *Id.* at 850.

[32] *See Campus Invs., Inc. v. Cullever*, 144 S.W.3d 464, 465-66 (Tex. 2004); *Capitol Brick, Inc. v. Fleming Mfg. Co.*, 722 S.W.2d 399, 401 (Tex. 1986).

[33] 215 S.W.3d at 850 (addressing a misunderstanding about the scope of the statement in *Capitol Brick* that was quoted in *Cullever*).

forwarded to the address designated by the statute. It is this nuance that some courts have missed in overstating the effect of a *Whitney* certificate. Those decisions implying or affording more evidentiary weight to a *Whitney* certificate than *Wachovia Bank* allows are disapproved.[34]

In Texas, "no-answer default judgments are disfavored" and cannot be sustained absent meticulous adherence to service requirements.[35] Such judgments are "tolerable" when "the absent party could have appeared but chose not to do so,"[36] but "[i]f the defendant did not appear because he or she never received the suit papers,"[37] then the "failure to affirmatively show strict compliance . . . renders the attempted service of process invalid and of no effect."[38] Such is the case

---

[34] *See, e.g.*, *Balkan Express, LLC v. Hollins*, No. 01-22-00911-CV, 2023 WL 8720912, at *2 (Tex. App.—Houston [1st Dist.] Dec. 19, 2023, no pet.) (mem. op.); *Dansk Express, LLC v. IPFS Corp.*, No. 01-22-00621-CV, 2023 WL 4937497, at *6 (Tex. App.—Houston [1st Dist.] Aug. 3, 2023, no pet.) (mem. op.); *Acadian Props. Austin, LLC v. KJMonte Invs., LLC*, 650 S.W.3d 98, 112 (Tex. App.—El Paso 2021, no pet.); *MG Int'l Menswear, Inc. v. Robert Graham Designs LLC*, No. 05-18-00517-CV, 2019 WL 642724, at *3 (Tex. App.—Dallas Feb. 15, 2019, no pet.) (mem. op.); *El Paisano Nw. Hwy., Inc. v. Arzate*, No. 05-12-01457-CV, 2014 WL 147701, at *2-4 (Tex. App.—Dallas Apr. 14, 2014, no pet.) (mem. op.); *BLS Dev., LLC v. Lopez*, 359 S.W.3d 824, 828 (Tex. App.—Eastland 2012, no pet.).

[35] *Spanton*, 612 S.W.3d at 316 ("We have long held that a no-answer default judgment cannot stand when the defendant 'was not served in strict compliance with applicable requirements.'" (quoting *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex. 1990))); *Hubicki*, 226 S.W.3d at 408 ("[W]e rigidly enforce rules governing service when a default judgment is rendered[.]").

[36] *In re Lakeside Resort JV, LLC*, 689 S.W.3d 916, 920-21 (Tex. 2024).

[37] *Sutherland v. Spencer*, 376 S.W.3d 752, 755 (Tex. 2012).

[38] *Uvalde Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 885 (Tex. 1985).

here. Nothing in the record, including the *Whitney* certificate, alleges or identifies the Foley, Alabama address as Shamrock's "most recent address . . . on file with the secretary of state" as required for valid substituted service under section 5.251(1)(A).

Having held that the record does not demonstrate strict compliance with the Texas Business Organizations Code's substituted-service requirements,[39] we reverse the court of appeals' judgment, vacate the trial court's default judgment, and remand to the trial court for further proceedings.

John P. Devine
Justice

**OPINION DELIVERED:** January 16, 2026

---

[39] *Primate Constr.*, 884 S.W.2d at 153 (the person requesting service bears the burden of ensuring "service is properly reflected in the record").